All right, Mr. Croteau, are you ready to proceed, and did you wish to save some time for a rebuttal? Yes, Your Honor, I do. I'd like to save three minutes, please. Okay. Please go ahead. Thank you, Your Honor. Good morning, Madam Justice and Associate Justices. May it please the Court, my name is Roger Croteau, and I'm here on Saticoy Bay LLC Series 2175 Clearwater Lake. Your Honor, we've put this appeal on, and it's a very finite issue, I think, that we've appealed. And it really foils down to what is reliance, if reliance is not something that we talk about in terms of detrimental or something we talk about that prejudice, we consider those words to be relatively synonymous. Pursuant to the Shadowwood case, the Shadow Canyon case, and its progeny, there are two aspects to determining whether or not an HOA trustee's letter slash HOA letter constitutes some notice that the lender is allowed to rely upon without providing a tender or some attempt to pay the super priority payment. In this particular case, it's very clear there was no attempted tender of any kind. The difficulty in representing this case and bringing it forward is we're almost asked to prove a negative. What we know is in the complaint, there was no assertion that there was ever a Red Rock letter identifying that this lien was being foreclosed on on a subordinate basis and that it would not be supplanted by the HOA foreclosure sale. That issue wasn't raised until much later in the case upon the parties getting discovery from the HOA trustee. The lender and the lender's servicing agent never provided any discovery that even evidenced this Red Rock letter in their file. So what we have to discern is from the record in the file, we have to discern that they received, if you will, just because it was in the HOA foreclosure trustee's file, that they somehow got this letter and detrimentally relied upon it or relied upon it to the extent that they didn't attempt a tender. They didn't attempt to do anything in this case. Sat back, did nothing, and then comes forward and says the letter is sufficient to protect their interest, even though they were fully aware of the Notice of Included Lien Assessment that was recorded. They were fully aware of the Notice of Default. They were fully aware of the Notice of Sale. Mr. Coteau, can I interrupt you for a moment? So you just stated that they didn't demonstrate reliance on the letter, which incorrectly noted that their lien would have priority over the HOA lien. I don't think that's disputed. I think it's accepted that that information was incorrect in the letter. That, I believe, is based on your understanding of the Shadow Canyon case, but how does the Whitehorse decision from our court affect whether reliance is actually the standard or whether the inaccuracy just needed to affect the sale? And I'm sorry, there's a second question, too. Hopefully you can unbundle this and address both. It seems that you didn't raise the issue of reliance until a motion to reconsider, if I'm remembering procedurally how this occurred. And so there's an issue of whether that argument is waived. And obviously we don't believe the argument is waived. We believe that it is compiled into and part of the same arguments versus reliance and prejudice. If you're prejudiced, I guess it begs the question, Your Honor, if I was going to answer it this way, if the letter never went but it was created, are they truly prejudiced? And there's no evidence that they actually received it in the record whatsoever. So when we discuss prejudice and reliance, reliance is you received something, you saw it, you understood it, and you relied upon it and didn't proceed. And that's essentially what they argue. But they also argue that they're prejudiced by their reliance on it but not going forward. So I am somewhat at a loss. I wasn't trial counsel in this case, obviously, but the issue here is I think they're synonymous. I don't believe they are so distinct that they cannot be coupled. And the part of reasoning for that is very simply there's no proof they actually had the letter until after it was disclosed in discovery. And then as soon as it's disclosed in discovery, it's glommed upon as being the slight evidence required to show fraud, oppression, and non-affairness. But there's no evidence that they looked at it, made a decision, and did not proceed. Matter of fact, the evidence is the contrary. The evidence says we couldn't calculate the super priority payment from the notice of delinquent assessment lien or the notice of default or the notice of sale. Particularly, the Red Rock letter was addressed to the Bay Harbor Servicing, Bayview Servicing, I'm sorry. And in that letter, it was literally one line that covered it, but it was a collection letter. And typically, the way these cases have come down on the futility arguments and the futility of making tender payments and so forth have been when there's been an attempted tender and there's been a rejected tender. In this particular case, they're trying to rely on a document that's literally a one line that says we're not going to upset your lien, but the next sentence of that letter, the next one sentence of that, says that your lien status may be in jeopardy. So that is a problem in and of itself. I think it creates more of a question and mandates a phone call. I mean, the Red Rock letter very simply states that the notice will be sent. I'm sorry. My apologies. It's a collection letter, and the basis of the collection letter is to facilitate the collection of the payments. And it goes on to reinstate the above account. You must contact Red Rock Services to obtain that up-to-date payoff. It says the lien may affect your position. These are very relevant points. They put you on notice that it's a problem. And candidly, is it enough to rely upon that one sentence in which not to call, not to attempt a tender, not to attempt to pay, and I don't think that that's the objective. The objective should be this might be notice of something. Is it any more notice than the notice of default and the notice of sale? All right, Mr. Cato, can I take you to a different direction here? The information in the record does not include the citizenship of each of Sataquai Bay LLC's members. And, of course, we need complete diversity of the parties before we have jurisdiction. And an LLC, of course, is a citizen of every state in which its owners are members or citizens. So can you represent to the court or is there any information from the record that we could determine that the Sataquai Bay LLC members are citizens of Nevada or at least that they're not citizens of Florida? Your Honor, I'll make a representation as an officer of the court that, based upon my understanding, upon inquiry, everyone on the Sataquai side is a resident of the state of Nevada. All right, I'm going to ask you to do something else. I want you to, if you can, get a hold of the formation papers for the LLC and determine the citizenship of each of the members of the LLC. And if what you've just represented to the court is incorrect, file a notice of errata. I'll do that, Your Honor. So if we do not receive a notice of errata from you within seven days, then we will proceed as if what you've represented to us is indeed correct, and we do have diversity, so we have jurisdiction. Thank you. Yes, Your Honor, I respect that. Thank you. Thank you. All right, we've gone over your time to save time for rebuttal. You wanted to save three minutes, I believe. I did. I just wanted to respond very quickly to Whitehorse. Okay. I don't think the decision in Whitehorse actually addresses the inquiry, if you will, or the reliance issue. I think it simply makes a statement. And to know the underlying facts in that record, I don't have that decision. I read the decision, obviously, but it didn't necessarily articulate it for me. I think the objective, one quick point, and I'm going to try to save a minute, one quick point is the argument is, is it sufficient to simply present this letter? Is that, in and of itself, sufficient evidence without testimony of reliance, without testimony that you received the letter, without testimony that it impacted their decision in some shape, manner, or form that constitute what is necessarily a set-aside sale based on Shadow Canyon? But didn't Linear submit responses to interrogatories saying that they didn't act because of that letter? They said they received the letter, Your Honor, and I think it's interrogatory four, either four or 11 in their responses, of which where they cite the reason for not going forward, and they simply cited the letter as an exhibit for the reason not going forward. But, again, in their complaint, it was never listed, so originally filed. All right. Thank you. We've taken up all your time, but I'll give you a couple of minutes on rebuttal. I appreciate it, Your Honor. And I'm sorry if I'm mispronouncing this, Mr. Garabedian? Yes, that's correct, Your Honor. Please go ahead. May it please the Court, Jory Garabedian, on behalf of Linear Mortgage. This Court must affirm the order granting summary judgment on at least three separate and independent bases. Number one, as Mr. Coteau has alluded to, he's raising reliance. The problem is reliance was never addressed and raised below before the district court in any of the summary judgment briefings. Based on that, this court cannot consider the issue. The second point is even if reliance had been raised, it still is not an express and clear requirement to show fraud, unfairness, or oppression to set aside a sale. The third point is even if we examine what the evidence on the record shows, the junior lien notice itself, as well as the lack of tender or payment, the lack of doing anything really, in addition to the interrogatory responses showing that, based on these notices, the first due to trust beneficiary was unable to determine what, if any, super priority lien was at stake, all show that the HOA sale was, in fact, affected by fraud, unfairness, or oppression. Let me address the first point really quick because I think this is very important because this really determines whether or not reliance gets in the door. All right. So, Mr. Garabedian, let me just jump to the chase on this reliance argument, whether it's been waived. You agree that they have raised whether the district court correctly applied the Shadow Canyon standard, right? I mean, that's before us. They disputed that below and they've briefed it here. That's correct. In fact, they generally raise it, but then, again, part of the requirements in examining whether or not a sale is unfair, oppressive, or fraudulent is you have to look at the totality of circumstances. Okay. So that suggests that even if we decided that we wouldn't reach the argument about reliance, we're still going to be addressing the Shadow Canyon factors and standard in reviewing the district court's application of that standard, which, as you just noted, involves the totality of the circumstances. So I'm not sure if there's a practical difference. We still have to determine whether the sale should have been set aside. Well, respectfully, Your Honor, if you take a look at the opening brief, really, the issue is very narrow. And, in fact, the issue that they say, it's one but a foundational issue, is whether the trust showed reliance upon the erroneous statement of Red Rock in relation to the HOA's lien priority. This is opening brief at five. So, really, the issue on appeal is very narrow. That really wasn't raised. So, respectfully, I would say that this reliance issue was not sufficiently raised below and that this is really the only issue on appeal. So you're changing what you just told me a moment ago? You're saying whether the district court correctly applied Shadow Canyon is not before us? Well, not according to the – it was raised below, but what's now on appeal is this narrow issue. All right, go ahead. With that said, I will move right into whether or not reliance is required. If you look at the Whitehorse Estates matter as well as Shadow Canyon, there's really two elements to show whether or not a sale should be set aside based on fraud, unfairness, and oppression. Number one, there's got to be a great disparity in sales price between the actual price paid versus the fair market value. And, second, there needs to be some sort of fraud, unfairness, or oppression that affects the sale. Those are the only two requirements to show to set forth a prima facie case of setting aside a sale, which, of course, was done here. There has been no announcement by the Nevada Supreme Court in a published decision or otherwise suggesting that there has to be reliance on a specific HOA lien or a junior HOA lien notice letter. And, in fact, the Nevada Supreme Court has held in LARS that these letters are basically patently unfair. And if you look at LARS, it's the exact same letter that we're dealing with here today. And in examining that letter, the court says a pre-foreclosure – and I'll paraphrase. I'm not going to quote, but I'll paraphrase. A pre-foreclosure junior lien notice letter sent by the HOA's agent constitutes unfairness because it gives the impression that a purchase would remain subject to the first deed of trust on the property. A foreclosure sale that does not extinguish the first deed of trust produces a lower bid price and, at the very least, suggests the HOA's foreclosing on the sub-priority portion of the lien, thereby lulling the beneficiary into believing it's not in jeopardy. Notably, this court in the Whitehorse case cites favorably to LARS in distinguishing what's the difference between a mortgage protection clause in the CCNR versus this junior lien notice. And, in fact, the Whitehorse case blatantly says it's clearly unfair. It's clearly unfair. So, based on that, the junior lien notice itself is, by itself, on its own, blatantly unfair. And, by the way, neither LARS nor Whitehorse discuss any required element of reliance. And, in fact, again, we're looking at the totality of the circumstances. And what the circumstances were before the court was, number one, that there were representations made through this letter to the beneficiary, Bayview Mortgage Servicing,  and, then, number three, that what Bayview did with this letter was, well, it believed that it was not in jeopardy, that there was no super-priority lien at stake. This is all on the record before the district court. To the extent Sadaquah Bay now contends, well, we don't believe we received the letter. Well, that wasn't raised either. That was never an argument advanced before the district court to the extent that, well, you didn't show any specific reliance on this. That was also never raised from the district court. And I will say that this letter is proof. If I can interrupt you here, did the HOA letter that had the inaccurate information, was that sent or distributed to other third parties other than yourself? Based on the record before, I'm not entirely sure. I would have to look at the discovery file, so I cannot firmly make that representation one way or the other to the court. However, I do. The follow-up question is, I know the sale price was 12% of the fair market value of the property. Can you then attribute that low sale price to the misrepresentation in the letter? Sure, because, again, the notice in the letter says that it's foreclosing on a junior lien, and as the Supreme Court has said in LARS and as cited favorably by White Cross Estates, a foreclosure on a junior lien naturally triggers low sales price because the buyer believes that it's taken subject to the first mortgage. And the other component to this, and I want to be clear, is there doesn't necessarily need to be reliance on the letter. The letter is unfair in another way, in that it does not notify the first deed of trust holder that there's a superpower lien at stake. So it not only fails from a fraud perspective, but it also fails from an unfairness and a notice perspective, because if you're getting this letter, why on earth would you do anything to stop the sale? It doesn't make any sense. And that's what the district court said. You know, there was really no reason to do anything on the basis of this letter. So outside of the fraud component and reliance, the notice itself is patently on its face, not giving any notice at all that a superpower lien is being foreclosed, and it suggests that a sub-priority lien is being foreclosed based on that letter. So, Mr. Garbutian, Shadow Canyon cites GOLDEN, and GOLDEN stands for the proposition that the fraud must account for and bring about the inadequate price. Does that suggest that the more restrictive reading of the standard that Sataquai Bay is advocating might be correct? No, I don't believe so. And the reason, again, I guess the bottom line is we're dealing with two, not three elements. We're dealing with fraud and unfairness or impression that affects the sale. We're not dealing with fraud and unfairness and impression, and then that causes the sale. The standard really, as announced and clarified by the Supreme Court in Shadow Canyon, is whether or not, as a whole, under the totality of circumstances, the sale itself was affected by any fraud, unfairness, and impression. It can be affected not just by the sales price, but, again, a block tender or, frankly, lack of notice to protect an interest. And, again, the other thing, the component to this that's important is that there's no dispute that sales price was inadequate here. It was grossly inadequate, and that, therefore, sets a sliding scale about how much fraud you need to approve. The more disparity between the sales price versus the fair market value, which isn't disputed, the less fraud you have to show. And so, therefore, only slight evidence of this unfairness component is necessary in order to overturn the sale. And with that, Your Honor, I would respectfully request that the court affirm summary judgment in favor of mortgage fund or linear. Excuse me. Thank you. All right. Mr. Croteau, we'll give you two minutes. Thank you very much, Your Honor. A few things. I was going to bring this up and ran out of time, obviously. But Golden versus Tommy Ossoff. That is the absolute element. Every one of these cases has, and we're talking about from Shadowhere to Chapel Canyon, its progeny is the price alone will never upset the sale. There has to be something that accounts for the low price for it to be affected, and that's the fraud, oppression, and unfairness. In our particular case, that doesn't exist at all. So, I mean, the market bidders have no notice of this letter that goes to Bayview Loan Servicing on January 2nd of 2014. It wasn't sent to anywhere else. And, again, just for the record, there has been no production by the lender and no production by the servicer in this case that contained the letter, except after they got the COR exhibits from Red Rock Association. That I can represent. I went through that yesterday to verify myself. So, you still have to account for this letter causing a depression in the price. There was no depression in the price as a result of the letter. There's no evidence to that whatsoever. The only argument is whether or not that, in fact, somehow impacted the lender's ability or desire to come in and cure the super priority payment or, frankly, to pay the lien or to do anything. The other thing that's relevant in this case is this was a collection letter. It was a notice reaching out to the lender saying, hey, look, there's sales going on, despite the fact you received the NOD, the Notice of Default, despite the fact they received the Notice of Blinkant Lien Assessment, and despite the fact they received the Notice of Sale, of which did not contain any exculpatory language, any carve-outs, anything related to this case. They were not foreclosing the full lien. And, again, coupled with the rest of the evidence that there is no reliance. ROG number 2 at SCR 83 says the HOA informed the deed of trust beneficiary prior to the sale that it was pursuing on the sub-priority, and it listed the trust 753, which is the Red Rock letter. That's the entire response that they rely upon pursuant to Rule 54 in support of its case. I'm out of time, I guess. Yes, thank you. Thank you both for your arguments this morning. We will take this case under submission. Thank you very much, Your Honor. Thank you, Your Honor.
judges: BADE, LEE, Cardone